**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Timothy D. Ringgold and Gina A. Ringgold, | : | Bankruptcy No. 20-14207-MDC |
| Debtors. | : | |
| | | |
| Glatz Aeronautical Corp., | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 21-00011-MDC |
| Timothy D. Ringgold and Gina A. Ringgold, | : | |
| Defendants. | : | |

# MEMORANDUM

### I.    INTRODUCTION

On February 2, 2021, Glatz Aeronautical Corporation ("Glatz") filed a Complaint[1] in the above-captioned adversary proceeding (the "Adversary Proceeding") against Timothy Ringgold ("Mr. Ringgold") and Gina Ringgold ("Mrs. Ringgold" and together with Mr. Ringgold, the "Debtors" or the "Ringgolds"), seeking a determination that debts allegedly owed to Glatz by the Debtors are excepted from discharge. On August 31, 2021, Glatz moved for summary judgment (the "Summary Judgment Motion")[2] with respect to Count I of the Complaint, seeking a determination that a judgment Glatz obtained against the Debtors in Pennsylvania state court for discovery abuse sanctions is nondischargeable pursuant to §523(a)(6) of the United States

---

[1] Adv. Pro. Docket No. 1, as amended by Adv. Pro. Docket No. 5.
[2] Adv. Pro. Docket No. 13.

Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").[3] After discovery fights before this Court and briefing, the Summary Judgment Motion is ripe for resolution. For the reasons set forth herein, the Court will grant in part and deny in part the Summary Judgment Motion.

## II. RELEVANT BACKGROUND[4]

### A. Sanctions Imposed by the Pennsylvania Court

In 2008, Defense Solutions, LLC ("Solutions LLC") and Defense Solutions, Inc. ("Solutions Inc."), entities for which one or both of the Debtors served as officers and/or directors, sued Glatz in the Court of Common Pleas of Bucks County, Pennsylvania (the "Pennsylvania Court"). Glatz subsequently raised counterclaims against Solutions LLC, Solutions Inc., and related entity Defense Solutions Holding, Inc. ("Solutions Holding, Inc." and together with Solutions LLC and Solutions Inc., the "Solutions Entities"). In 2011 Glatz obtained a judgment against the Solutions Entities in the amount of $135,562.00.

After obtaining the judgment, Glatz pursued discovery in aid of execution. What followed between October 2011 and September 2013 were five separate orders from the Pennsylvania Court compelling the Solutions Entities, Mr. Ringgold as their Chief Executive Officer, and in certain instances Mrs. Ringgold as their Chief Financial Officer, to produce answers and documents responsive to Glatz's outstanding discovery requests, and/or sanctioning them for failing to do so by requiring them to pay Glatz's counsel fees and court-imposed fines (the "Initial Sanctions").

---

[3] The Summary Judgment Motion does not seeks summary judgment with respect to Counts II, III, and IV of the Complaint.
[4] The relevant background is taken from the undisputed facts set forth in the parties' pleadings in support of and in opposition to the Summary Judgment Motion, including the exhibits attached thereto.

2

The Initial Sanctions, however, did not end the issue, and Glatz filed additional motions to compel and for sanctions.  In August 2015, the Pennsylvania Court entered another order (the "August 2015 Sanctions Order") sanctioning the Solutions Entities $6,300.00 for failure to provide full and complete responses to Glatz's discovery requests, and directing them to authorize a third party stock transfer agent to provide Glatz all information regarding ownership and stock transfers in Solutions Holding, Inc. (the "Second Round Sanctions").  The August 2015 Sanctions Order further provided that "In the event of transfer by or between defendants and Colonel Timothy Ringgold and/or Regina A. Ringgold, all funds paid to defendants Ringgold shall be remitted to Plaintiff."

Unfortunately, even the Second Round Sanctions did not smoothen the path for Glatz's discovery in aid of execution, and in September 2016 Glatz again moved the Pennsylvania Court for sanctions.  After a hearing and briefing on that sanctions motion, the Pennsylvania Court issued a Memorandum Opinion on June 22, 2017 (the "June 2017 Sanctions Order") awarding Glatz counsel fees, in the amount of $71,328.71, "incurred ferreting out assets converted by defendant at plaintiff's expense."  The Memorandum Opinion concluded that "defendant has acted contemptuously of the Court by stonewalling plaintiff's efforts to collect this judgment even while plaintiff was conducting depositions in aid of execution by liquidating assets in favor of other creditors to plaintiff's disadvantage, by lying under oath as to the existence of assets which he transferred to other creditors."

In July 2017, Glatz moved the Pennsylvania Court for of the June 2017 Sanctions Order reconsideration (the "Reconsideration Motion") on the basis that the court failed to enter any sanctions directly against the Ringgolds individually.  Glatz argued that the basis for seeking

sanctions was Mr. Ringgold's "intentional, unlawful, contemptuous and perjurious conduct" in preventing Glatz from executing on its 2011 judgment against the corporate entities. Glatz further argued that the sanctionable conduct was committed by the Ringgolds individually and in their corporate capacities in failing to disgorge proceeds they received from the sale of Solutions Holding, Inc. stock (the "Stock Sale"), as required by the August 2015 Sanctions Order, and diverting proceeds from Solutions Holding, Inc.'s operations to themselves. Glatz therefore requested the Pennsylvania Court to sanction the Ringgolds individually in an amount equal to the proceeds of the Stock Sale, any additional amounts the Ringgolds diverted and concealed from execution (including approximately $30,000 allegedly received from Elbit Systems), as well as Glatz's counsel fees in pursuing the June 2017 Sanctions Order.

In August 2017, the Solutions Entities responded to the Reconsideration Motion, asserting that the sanctions issued pursuant to the June 2017 Sanctions Order were intended by the Pennsylvania Court to be solely corporate liabilities for which the Ringgolds bore no responsibility, and that no facts or circumstances existed suggesting otherwise. The verification attached to the Solution Entities' response was executed by Mr. Ringgold as "an officer of one of the parties in the foregoing matter."

On August 24, 2017, the Pennsylvania Court issued an Order (the "August 2017 Sanctions Order"), entering judgment "against all defendants, jointly and severally in the sum of $71,828.00, with interest from the date of the Order of May 9, 2011."[5] The Order goes on to provide that "Liability for payment of the judgment is joint and several, including Timothy Ringgold and Gina Ringgold, Defense Solutions LLC, Defense Solutions, INC and Defense Solutions Holding, Inc."

4

### B. The Parties' Arguments on Summary Judgment

Glatz argues in its Summary Judgment Motion that the August 2017 Sanctions Order entered against the Debtors represents a debt for "willful and malicious injury" under §523(a)(6) of the Bankruptcy Code, and therefore is nondischargeable. According to Glatz, the June 2017 Sanctions Order identified the Solutions Entities' sanctionable conduct, committed by and through the Debtors as the entities' agents, and that such conduct satisfies the elements of willful and malicious injury. Specifically, Glatz argues that willfulness is established by the Pennsylvania Court's finding that the Solutions Entities "stonewalled" Glatz's collection and discovery efforts by liquidating assets in favor of other creditors to plaintiff's disadvantage, and by lying under oath as to the existence of assets transferred to other creditors. Glatz argues that these actions were substantially certain to cause injury to Glatz and did inflict deliberate and intentional injury. Glatz also argues that these actions were taken with actual malice, as Mr. Ringgold explicitly testified that he put his own financial interests ahead of the rights of Glatz. Moreover, Glatz asserts, the August 2017 Sanctions Order, entered upon consideration of Glatz's Reconsideration Motion, makes clear that the Pennsylvania Court intended to sanction the Ringgolds individually for their contemptuous conduct, and that this determination is subject to collateral estoppel.

In their opposition to the Summary Judgment Motion (the "Summary Judgment Opposition"),[6] the Debtors first assert that they "had been removed or otherwise resigned as officers and directors by no later than July 26, 2016," citing an order by the District Court of Clark County, Nevada, placing Solutions Holding, Inc. into receivership and appointing a

---

[5] Although the Order is dated August 24, 2017, it was not docketed until August 28, 2017.
[6] Adv. Pro. Docket No. 32.

custodian, "thereby removing the Ringgolds as officers and/or directors by operation of law, to the extent the Ringgolds were even officers and directors at that time, and/or to the extent that the Ringgolds had not already resigned or been otherwise removed." With respect to the sanctions imposed by the August 2017 Sanctions Order, the Debtors argue that it was not a sanctions judgment against them because they "were not defendants to that action, were not before the court in their individual capacities and to the extent they attended any hearings, they attended such hearings as former officers and directors of Defense Solutions Holding, Inc. having been previously removed by court order in July 2016." They therefore argue that Glatz is taking "great liberties" in interpreting the August 2017 Sanctions Order to have been intended to sanction them. Rather, according to the Debtors, the Pennsylvania Court "was very specific as to who [it] was entering judgment against, which did not include the Debtors as non-defendants. The Debtors argue that Glatz's "unilateral[] and self-serving determinations of purportedly 'undisputed facts' and legal conclusions" do not form the basis of summary judgment.

### III. DISCUSSION

#### A. Standard for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law. *See, e.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. *Liberty Lobby, Inc.,* 477 U.S. at 249. If, in evaluating the record and making all reasonable inferences therefrom in the light most favorable to the party opposing the motion, it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor. *Liberty Lobby*, 477 U.S. at 252. If the moving party bears the burden of proof were the matter to proceed to trial, the movant must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Lee v. 6209 Mkt. St., LLC (In re Lee)*, 2022 Bankr. LEXIS 675, at *9 (Bankr. E.D. Pa. Mar. 15, 2022) (*quoting In re Polichuk*, 506 B.R. 405, 420-22 (Bankr. E.D. Pa. 2014)). The evidence must establish all essential elements of the movant's case, and if this initial burden is met, the responding party must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Id. When the non-moving party bears the burden at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of fact, the non-moving party must produce evidence sufficient to create a genuine issue. *Davenport v.*

*Medtronic, Inc.*, 302 F. Supp. 2d 419, 435 (E.D. Pa. 2004). That is, to survive summary judgment, the nonmovant must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

    **B.**    **Willful and Malicious Injury Under §523(a)(6) of the Bankruptcy Code**

Section 523(a)(6) of the Bankruptcy Code excepts from an individual debtor's discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Based upon the overriding purpose of the Bankruptcy Code of providing relief to debtors from the weight of oppressive indebtedness and provide them with a fresh start, exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors. *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 136 (Bankr. E.D. Pa. 2008) (*citing In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995)). The burden is on the creditor to prove willful and malicious injury by a preponderance of the evidence. *In re Granoff*, 250 Fed. Appx. 494, 495 (3d Cir. 2007) (*citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).

The phrase "willful and malicious" as used §523(a)(6) is narrowly defined. *Nat'l Fertilizers, Ltd. v. Vepuri (In re Vepuri)*, 2009 Bankr. LEXIS 2781, at *18-19, 2009 WL 2921305 (Bankr. E.D. Pa. 2009) (*citing Kawaauhau v. Geiger*, 523 U.S. 57, 63, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)). A debtor's actions can only be "willful and malicious" under § 523(a)(6) "'if they either have a purpose of producing injury or have a substantial certainty of producing injury.'" Id. (*quoting In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994)). Merely because a debtor's conduct may have had "'a high probability of producing harm ... does not establish that

his conduct was substantially certain to produce [an] injury.'" *Harris v. Kamps (In re Kamps)*, 575 B.R. 62, 73 (Bankr. E.D. Pa. 2017) (*quoting In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994)).

Willful injury requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id.* (*quoting Kawaauhau*). As such, a party seeking a nondischargeability determination must show that the debtor actually intended to injure the party or its property; negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious. *Schlessinger v. Schlessinger (In re Schlessinger)*, 208 Fed. Appx. 131, 134 (3d Cir. 2006) (*citing Kawaauhau*); *Corcoran v. McCabe (In re McCabe)*, 588 B.R. 428, 433 (E.D. Pa. 2018) ("A debt is non-dischargeable under § 523(a)(6) if the debt arises from an act done with 'actual intent to cause injury,' meaning there must have been a 'deliberate or intentional injury ....'") (*quoting Kawaauhau*).

Malicious injury requires (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Id.* (*quoting In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008)). A showing of specific malice is not required, and an injury can be malicious even in the absence of personal hatred, spite, or ill-will. *Kamps*, 575 B.R. at 73. However, in order to establish that an injury is malicious under §523(a)(6), the aggrieved party must prove that the debtor's conduct was motivated by some purpose other than the maximization of the debtor's personal financial interests. *Sherwin Williams Co. v. Grasso (In re Grasso)*, 487 B.R. 434, 447 (Bankr. E.D. Pa. 2013) (*citing Jacobs*, 381 B.R. at 147).

### C. The Pennsylvania Court's Sanctions Against Debtors is Established as a Matter of Law

The Court first finds that there is no genuine dispute of material fact that the Pennsylvania Court intended to and did sanction the Debtors individually. While the Court

acknowledges that the language the Pennsylvania Court used in the June 2017 Sanctions Order and the August 2017 Sanctions Order is less-than-precise, the terms of those orders and the context in which the August 2017 Sanctions Order was entered make clear that the Pennsylvania Court sanctioned the Debtors, not just the Solutions Entities.

In the June 2017 Sanctions Order, the Pennsylvania Court reasoned as follows in support of the imposition of sanctions: "We agree that *defendant* has acted contemptuously of the Court by stonewalling plaintiff's efforts to collect this judgment even while plaintiff was conducting depositions in aid of execution by liquidating assets in favor of other creditors to plaintiff's disadvantage, by lying under oath as to the existence of assets which *he* transferred to other creditors." (emphasis added). In imposing sanctions, the Pennsylvania Court also issued the following prospective sanction: "If any further assets should be discovered by plaintiff which were not disclosed by *defendant*, we will, as a sanction to *defendant* for non-disclosure thereof, impose a sanction equal to 200% payable to plaintiff in the amount not disclosed by *defendant*." (emphasis added). If the Pennsylvania Court were sanctioning just the Solutions Entities, the use of the singular "defendant" cannot be squared with the fact that all three Solutions Entities were defendants. Rather, it reflects the Pennsylvania Court's determination that Mr. Ringgold, as an officer and director of the Solutions Entities, was the true responsible party with respect to the contemptuous conduct deserving of sanctions. This is evidenced by the Pennsylvania Court pointing to *Mr. Ringgold* lying under oath as to assets which *he* transferred to other creditors. The language of the June 2017 Sanctions Order reflects the Pennsylvania Court's determination that Mr. Ringgold's conduct was sanctionable.

Moreover, the language and context of the August 2017 Sanctions Order leaves no doubt

that the Pennsylvania Court sanctioned both of the Debtors, as well as the Solutions Entities. In addition to the Solutions Entities defendants, the Pennsylvania Court expressly made the Debtors liable for the sanctions. This makes sense, as both of the Debtors were obligated under prior orders from the Pennsylvania Court to comply with discovery obligations. The Pennsylvania Court did so after Glatz petitioned it to reconsider the June 2017 Sanctions Order, precisely because it failed to sanction the Debtors. In response to Glatz's Reconsideration Motion, the Debtors argued to the Pennsylvania Court that it "obviously" believed there was no individual liability when issuing the June 2017 Sanctions Order. The Pennsylvania Court then entered the August 2017 Sanctions Order expressly providing that the Debtors were liable for the contempt judgment. The Court believes this context, together with the August 2017 Sanctions Order's express language, makes it abundantly clear that there can be no genuine dispute the Pennsylvania Court sanctioned the Debtors individually.

The Court rejects the Debtors' assertion that "ordering the Ringgolds in their capacity as officers of the named corporate defendants to make payments is not the same as entering a sanctions judgment against those individuals, specifically where the order clearly and unequivocally states that the judgment was entered against the 'defendants.'" Summary Judgment Response Brief, at §II.B.1. First, the argument that the Debtors were simply made financially responsible for the sanctions judgment in their capacity as officers of the named corporate defendants is wholly inconsistent with their argument that they were no longer officers or directors of the entities when the sanctions were imposed, and that to the extent they attended any hearings before the Pennsylvania Court they did so as former officers and directors of

Solutions Holding, Inc.[7] More importantly, the Debtors' actions formed the basis for sanctions, and the Pennsylvania Court had the authority to sanction the Debtors individually for their contemptuous conduct as agents of the Solutions Entities, and did so upon consideration of Glatz's Reconsideration Motion. *See, e.g., Ferrara v. Nordev, LLC,* 2012 WL 1999643, at *4 (E.D.N.Y. Apr. 10, 2012) (finding non-party officer and director of corporate defendant, with access to the information and documents sought in discovery, could be found in contempt and sanctioned under the well-established principle that an officer responsible for the corporation's affairs and for its disobedience to a court order may be held liable for contempt) (*quoting NLRB v. Maine Caterers, Inc.,* 732 F.2d 689, 691 (1st Cir. 1984) and *Wilson v. U.S.,* 221 U.S. 361, 376 (1911), and collecting other caselaw in support); *see also Vision West, Inc. v. Catalan (In re Catalan),* 590 B.R. 678, 688 n.9 (Bankr. E.D. Pa. 2018) (in finding, on summary judgment motion, that the debtor's liability for a default judgment entered against him and a corporate defendant for discovery misconduct constituted a debt for willful and malicious injury, stating that "In the present circumstances, the distinction between [the corporate defendant] and the Debtor is legally irrelevant. As the controlling shareholder and officer of [the corporate defendant], the Debtor is personally liable for tortious action personally committed while acting as an agent of the corporate entity under the 'participation theory' doctrine.") (*citing In re Modena,* 582 B.R. 643, 653 (Bankr. W.D. Pa. 2018))..

### D. Willful Injury Under §523(a)(6) is Established as a Matter of Law

The Court finds that there is no genuine dispute of material fact that the August 2017 Sanctions Order imposed liability on the Debtors for willful injury to Glatz for purposes of

---

[7] This argument also ignores that Solutions Holding, Inc. was just one of three Solutions Entities that were named defendants and for which the Ringgolds served as officers and/or directors.

§523(a)(6) of the Bankruptcy Code. In continually failing to cause the Solutions Entities to abide by their discovery obligations and the Pennsylvania Court's orders, the Debtors had a purpose of injuring, or were substantially certain to injure, Glatz. On this point the Court agrees with the reasoning of the undersigned's colleague, Judge Eric Frank, in *Vision West, Inc. v. Catalan (In re Catalan),* 590 B.R. 678 (Bankr. E.D. Pa. 2018). In that case, a Pennsylvania state court had entered a default judgment against the debtor and a corporate defendant as a sanction for discovery misconduct. *Id.* at 680. In the debtor's bankruptcy case, the plaintiff in the state court action sought a determination that the default judgment was nondischargeable under §523(a)(6) as a debtor for willful and malicious injury, and sought summary judgment. *Id.* Judge Frank found that most of the subject debt arose from a breach of contract claim, and was therefore dischargeable. *Id.* at 681. With respect to the portion of the judgment attributable to attorney's fees incurred by the plaintiff in seeking the debtor's discovery compliance, however, Judge Frank found the debt was for willful and malicious injury. *Id.* Judge Frank reasoned that the debtor's actions in lengthening the state court discovery process and still failing to produce documents or seek relief from the orders compelling production, "for no identifiable just cause – had the inevitable result of running up [the plaintiff's] legal fees . . . [The plaintiff's] evidence shows that the Debtor was under court-imposed obligations and that he knew of those obligations. Further, he had to know that failing to comply with his discovery obligations would cause harm and increase costs. Yet, he still failed to comply. The only reasonable inference to be drawn from these facts is that the Debtor was acting in bad faith – in bankruptcy nomenclature, a voluntary action taken with substantial certainty of producing injury." *Id.* at 688.[8]

---

[8] Although Judge Frank went on to conclude that the *Catalan* debtor's actions were also malicious within the

13

Here, the Solutions Entities, Mr. Ringgold, and in certain instances Mrs. Ringgold, were the repeated subject of Orders from the Pennsylvania Court compelling them to produce responses to Glatz's discovery requests or sanctioning them for failure to do so. Like the debtor in *Catalan*, the Debtors here were aware of their court-imposed discovery obligations but nonetheless failed to comply. Their intransigence culminated in the August 2017 Sanctions Order, which expressly made them responsible for over $70,000 in fees Glatz incurred from May 2011 in chasing their discovery obligations. The Debtors either intended to cause Glatz to incur enormous fees in post-judgment discovery litigation, or were substantially certain their years-long non-compliance would cause such fees. In either scenario, as Judge Frank concluded, the only reasonable inference to be drawn is that the Debtors were acting in bad faith and caused willful injury to Glatz.

As such, the Court finds that there is no genuine dispute that the August 2017 Sanctions Order represents a debt for willful injury within the meaning of §523(a)(6) of the Bankruptcy Code.

### E.    Malicious Injury Under §523(a)(6) is Not Established as a Matter of Law

Although willfulness has been established, the Court cannot conclude, at the summary judgment stage, that the August 2017 Sanctions Order represents a debt for malicious injury within the meaning of §523(a)(6). As discussed *supra*, malicious injury requires (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Here, where the Debtors were the subject of multiple sanctions orders over several years yet continued in their contemptuous non-compliance, the Court finds that there can be no

---

meaning of §523(a)(6) in that they were without just cause or excuse and wrongful, *id.* at 688, in this case the Court finds that it is not able to make that determination at the summary judgment stage, as discussed in §III.E *infra*.

genuine dispute that the first three elements above are met: the Debtors' repeated non-compliance was wrongful, intentional, and necessarily caused injury by requiring Glatz to incur substantial additional attorneys' fees. The August 2017 Sanctions Order was undoubtedly entered against the Defendants *because* their discovery abuse was each of these things.

However, in order to establish that an injury is malicious under §523(a)(6), the aggrieved party must prove that the debtor's conduct was motivated by some purpose other than the maximization of the debtor's personal financial interests. *Grasso*, 487 B.R. at 447 (*citing Jacobs*, 381 B.R. at 147). Here, at the summary judgment stage, Glatz has not yet met this burden. While Glatz argues that the Debtors acted with actual malice and that their "disdain for [Glatz] cannot be hidden or concealed," it also asserts that "[the Debtors'] actions were undertaken for their own financial benefit to the detriment of [Glatz] . . . [Mr. Ringgold], as an insider of an insolvent company, explicitly testified to putting his own financial interests ahead of the rights of Glatz, a creditor." Glatz Summary Judgment Brief, at 6-7.[9] Establishing malicious injury requires Glatz to prove the opposite of these allegations, *i.e.,* that the Debtors' actions in willfully injuring Glatz were undertaken without just cause or excuse, including that they were not undertaken solely out of their own financial self-interest. As the Debtors argue, the Summary Judgment Motion fails to cite undisputed facts showing the Debtors' repeated discovery misconduct was done for a reason other than their personal financial interests. Debtors' Summary Judgment Response Brief, §II.B.1.

As such, the Court finds there is a genuine dispute that the August 2017 Sanctions Order represents a debt for malicious injury within the meaning of §523(a)(6) of the Bankruptcy Code.

---

[9] Glatz fails to provide the Court with a citation to the purported testimony referenced, so the Court cannot evaluate the factual accuracy of this assertion.

### IV. CONCLUSION

For the reasons stated herein, the Summary Judgment Motion is granted in part and denied in part. The Summary Judgment Motion is granted with respect to Glatz's burden of establishing that the August 2017 Sanctions Order represents a nondischargeable debt for willful injury within the meaning of §523(a)(6) of the Bankruptcy Code. The Summary Judgment Motion is further granted with respect to Glatz's burden of establishing that the August 2017 Sanctions Order represents a debt based on a wrongful act, done intentionally, which necessarily caused injury, but is denied with respect to Glatz's burden of establishing that such act or acts was done without just cause or excuse (the "Just Cause or Excuse Issue").

The Court will hold a trial with respect to the Just Cause or Excuse Issue, as well as Counts II (Breach of Fiduciary Duty), III (Abuse of Process), and IV (Constructive Trust) of the Complaint, which were not the subject of the Summary Judgment Motion. An Order consistent with this Memorandum shall be entered.

Dated: January 23, 2023

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Thomas P. Donnelly, Esquire
Antheil, Maslow & MacMinn, LLP
131 West State Street
Doylestown, PA 18901

Robert M. Greenbaum, Esquire
Smith Kane, LLC
112 Moores Road, Suite 300
Malvern, PA 19355